NEW JERSEY DEPARTMENT OF LABOR.<br>WORKMEN'S COMPENSATION BUREAU.

JULIA RADASOCKY AND NICHOLAS RADASOCKY, INDIVIDUALLY AND AS GUARDIANS OF MARY RADASOCKY AND HELEN RADASOCKY, PETITIONERS, v. COLUMBIA SALVAGE CORPORATION, DEFENDANT.

**Skylarking Alleged—Minor Employe Died From Injuries Resulting From Explosion of Percussion Caps—Injury on Federal Government-owned Property—Alleged Contract Withdrawing Limits of Workmen's Compensation Act From Contract of Employment—Compensation Allowed.**

For the petitioners, *George J. Plechner* and *Hans M. K. Hansen.*

For the respondent, *Stamler, Stamler & Koestler.*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Respondent, Columbia Salvage Corporation, on and for some time prior and some time subsequent to September 21st, 1922, was engaged in salvage work on the government reservation known as Raritan Arsenal, in the township of Raritan, county of Middlesex and State of New Jersey.

Nicholas Radasocky, on and for some time prior to September 21st, 1922, was employed by the Columbia Salvage Corporation, said respondent, as a laborer and in the course of his employment, it was his duty, among other things, to explode the primer caps, parts of certain types of brass cartridges.

The work in which the said Nicholas Radasocky was engaged at the time of the accident was part of the work incident to salvaging seventy-five millimeter shells. The shells were first delivered at a large table, at which the work known as "breaking down" was done. This consisted of removing the projectile, the powder and in some cases the obturator. From this table the cartridges were then sent down a conveyor to the table where Nicholas Radasocky was working. His part of the work was to fire off the priming cap in the head of said cartridge, using for the purpose a chisel, and striking it with a hammer.

On September 21st, 1922, the said Nicholas Radasocky, while engaged in the act of exploding the primer cap in one of said cartridges, was fatally injured by reason of the fact the said cartridge was a loaded one and because of the injuries inflicted upon him by said explosion, he died on September 23d, 1922.

Three defenses are set up by the respondent as follows:

1. That the injuries sustained by Nicholas Radasocky, and which resulted in his death, were caused by skylarking or horseplay on the part of a fellow-employe named Green.

2. That at the time of his employment the said Nicholas Radasocky signed an agreement with the respondent that section 2 of the Workmen's Compensation act should not apply, but section 1 of the Workmen's Compensation act should obtain.

3. That the accident occurred on property purchased by the United States government, to be used as an arsenal, exclusive jurisdiction over which was ceded to the United States government by the State of New Jersey by an act of the legislature, passed in 1921, and for that reason this court had no jurisdiction to hear this case, but said action should have been brought in the federal court.

I will take up these alleged defenses in their respective order.

Petitioners contend that the injuries and death arose out of and in the course of the employment, while respondent contends that the accident was caused by skylarking and horseplay.

Respondent produced a witness, one Thomas Gorman, in order to establish its contention in this respect. A careful analysis of the testimony of Thomas Gorman leads me to the conclusion that he did not see any act committed by anyone which caused the death of the said Nicholas Radasocky. The testimony is contradictory, imaginative, inconsistent, improbable and incredible, and his testimony cannot be given any weight.

The testimony of Dr. Emmons, a witness produced by respondent for the purpose of endeavoring to show one Green's general reputation for committing pranks or horseplay, can have no bearing in this case.

The testimony of Arthur Anderson, produced by the respondent, is contradictory in itself, and in many respects contradicts the testimony of Thomas Gorman, and cannot be given any weight. The burden of proving skylarking or horseplay is on the respondent. This, in my opinion, respondent has failed to do.

Respondent further contends that section 2 of the Workmen's Compensation act does not apply because the deceased, Nicholas Radasocky, infant employe at the time of his employment, executed a certain contract in which he agreed that the schedule of compensation, as provided in section 2 of the New Jersey Workmen's Compensation act, did not apply and that the provisions of section 1 should obtain.

It is true that the said infant did execute such a contract, but I find that no notice of the execution of said contract between respondent and said infant had been given to the parents or guardians of said infant, in accordance with paragraph 9 of section 2 of the Workmen's Compensation act (*Supp. Comp. Stat., p.* 1642), which provides as follows:

"Every contract of hiring made subsequent to the time provided for this act to take effect shall be presumed to have been made with reference to the provisions of section 2 of this act, and unless there be as a part of such contract an express statement in writing, prior to any accident, either in the contract itself or by written notice from either party to the other that the provisions of section 2 of this act are not intended to apply, then it shall be presumed that the parties have accepted the provisions of section 2 of this act and have agreed to be bound thereby. In the employment of minors, section 2 shall be presumed to apply unless the notice be given by or to the parent or guardian of the minor."

I, therefore, find that the parties hereto are bound by the provisions of section 2 of said act.

Respondent further contends that since the accident occurred on property purchased by the United States government to be used as an arsenal, exclusive jurisdiction over which was ceded to the United States government by the State of New Jersey by an act of the legislature, passed in 1921, this court has no jurisdiction to hear this case.

Article 1, subdivision 17, section 8 of the constitution of the United States, vests power in congress as follows: "To exercise exclusive legislation in all cases whatsoever, of such district (not exceeding ten miles square) as may by cession of particular states and the acceptance of congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock yards and other needful buildings."

The legislature of the State of New Jersey passed an act in 1921, page 820, chapter 277, entitled "An act ceding to the United States of America jurisdiction in and over the lands heretofore or hereafter acquired by them for ordnance purposes near Metuchen, Middlesex county. Paragraph 1 of said act provides as follows:

"There is hereby transferred and ceded to the United States of America jurisdiction in and over so much of the

territory within this state as is included within all such lands as heretofore have been acquired by them for use for ordnance purposes near Metuchen, in the townships of Woodbridge and Raritan, county of Middlesex; and now occupied as an ord-nance depot known as the Raritan arsenal, and in and over all other lands that may hereafter be acquired by them for like use in the establishment, completion or extension of said ordnance depot, but the jurisdiction hereby ceded shall con-tinue no longer than the said United States shall own said land or lands."

The above-mentioned premises are known as Camp Raritan, and the injuries to the said Nicholas Radasocky, which caused his death, occurred on said premises.

In the case of the *Chicago, Rock Island and Pacific Rail-road Company, plaintiff in error, v. William McGlinn,* 114 *Sup. Ct. Rep.* 270, Mr. Justice Field, who wrote the opinion of the court, in part, says as follows:

"It is a general rule of public law, recognized and acted upon by the United States, that whenever political jurisdic-tion and legislative power over any territory are transferred from one nation or sovereign to another, municipal laws of the country, that is, laws which are intended for the protec-tion of private rights, continue in force until abrogated or changed by the new government or sovereign. By the cession, public property remains as before and with it those municipal laws which are designed to secure its peaceful use and enjoy-ment, as a matter of course, all laws, ordinances and regula-tions in conflict with the political character, institution and constitution of the new government are at once displaced."

Thus, upon a cession of political jurisdiction and legislative power—and the latter is involved in the former—to the United States, the laws of the country in support of an estab-lished religion or abridging the freedom of the press or au-thorizing cruel and unusual punishments and the like would at once cease to be of obligatory force, without any declara-tion to that effect, and the laws of the country on other sub-jects would necessarily be superseded by existing laws of the new government upon the same matters. But, with the re-

spect of other laws affecting the possession, use and transfer of property and designed to secure good order and peace in the community and promote its health and prosperity, which are strictly of a municipal character, the rule is general that a change of government leaves them in force until by direct action of the new government they are altered or repealed." *American Ins. Co.* v. *Ganter,* 1 *Pet.* 542; *Halleck Int. L.* ch. 34, ¶ 14.

In the case of the *State* v. *Morris,* 76 *N. J. L.* 222, the question arose as to whether or not the State of New Jersey had jurisdiction over a crime which had been committed on a reservation in this state, purchaser by the United States of America in 1806, the state consenting thereto in 1804. Justice Voorhees, who wrote the opinion of the court in this case, in part, says as follows:

"It is well settled that the federal courts have no jurisdiction over crimes except such as are made cognizable before them by an act of congress. Common law criminal offenses cannot be punished by the federal courts without federal statutory authority. Whether or not, without such legislation, the authority of the state would remain over the lands ceded, or whether offenders upon such reservations would be immune from punishment, is not necessary to decide.

"Congress has legislated upon the subject and has enacted that if any offense be committed in any place which has been or may hereafter be ceded to and under the jurisdiction of the United States, which offense is not prohibited or the punishment thereof is not specially provided for by any law of the United States, such offense shall be liable to and receive the same punishment as the laws of the state in which such place is situated, now in force, provided for the like offense when committed within the jurisdiction of such state.

"When congress exercises the power conferred by the constitution and legislates with reference to lands so purchased and ceded, such legislation, by virtue of the federal constitution, becomes exclusive. The state court, therefore, was without jurisdiction to try the case."

"Where lands within a state is acquired by the United States, with the consent of the state, the jurisdiction of the United States over it is supreme, and a reservation by the state of the right to serve civil or criminal process within the land ceded is limited to action arising outside of the ceded territory, but the laws of the state for the enforcement of municipal or private rights of individuals residing therein continue unless the United States provides legislation for the territory, and where jurisdiction is not given by the federal law to federal courts to assert and protect private rights, such rights may be enforced in the state courts." *Divine* v. *Unaka National Bank,* 140 *S. W. Rep.* 747.

There are numerous authorities to the same effect. As nothing has been done by congress to displace the laws of this state and the jurisdiction of its courts in regard to private rights and remedies, with respect to the land ceded for the purpose of an arsenal at Camp Raritan, Middlesex county, New Jersey, these matters remain unaffected by the act of cession.

I do, therefore, find and determine from the evidence as follows:

*First.* That Nicholas Radasocky, deceased, was, on September 21st, 1922, in the employ of the Columbia Salvage Corporation, the respondent, which employment was subject to the compensation section of page 96, laws of 1911, and the supplements thereto and the acts amendatory thereof.

*Second.* That the petitioners Julia Radasocky and Nicholas Radasocky are the parents of the said Nicholas Radasocky, deceased, and that Mary Radasocky and Helen Radasocky, petitioners, are sisters of the said Nicholas Radasocky, deceased.

Third. That on the 21st day of September, 1922, Nicholas Radasocky, the deceased, met with an accident, arising out of and in the course of his employment; that intoxication was not the proximate cause, nor was the injury intentionally self-inflicted.

*Fourth.* That Nicholas Radasocky, at the time of his injury and death, was an infant of the age of sixteen years.

*Fifth.* That respondent herein had knowledge of said accident within the time prescribed in paragraph 15 of said act.

*Sixth.* That the said accident occurred while deceased was firing off percussion caps in cartridges, and that one of said cartridges contained powder, and that in firing off the percussion cap in said cartridge he was injured by the explosion of said loaded cartridge on September 21st, 1922, and because of said injuries, died on September 23, 1922.

*Seventh.* That petitioners are entitled to no medical expenses.

*Eighth.* That the wages of deceased were $23.04 per week.

*Ninth.* That petitioners Julia Radasocky and Nicholas Radasocky are infirm and unable to work, and have no property and no means of support, but were dependent upon the said Nicholas Radasocky.

*Tenth.* That the said petitioner Mary Radasocky, on September 21st, 1922, was an infant of the age of twelve years, and petitioner Helen Radasocky, on September 21st, 1922, was an infant of the age of four years; that the said petitioners Mary Radasocky and Helen Radasocky have no property and no income or visible means of support, but were dependent on the said Nicholas Radasocky.

*Eleventh.* That the petitioners, Julia Radasocky, Nicholas Radasocky and the two children, Mary Radasocky and Helen Radasocky, the dependents of deceased, are entitled to compensation from the respondent for a period of three hundred weeks at the rate of $11.52; that petitioner is entitled to funeral expenses to the amount of $100; that petitioners are entitled to their attorney's fees in this case.

It is therefore, on this 19th day of January, 1925, ordered that judgment final be entered in favor of the petitioners and against the respondent, and that the respondent make payments thereof as follows:

For the accident resulting in the death of Nicholas Radasocky, immediate payment in a lump sum of compensation at the rate of $11.52 per week from September 23d, 1922, to

the. date of this order, and thereafter weekly payments of $11.52 for the balance of the three hundred weeks.

Also $100 for funeral expenses.

It is further ordered that respondent pay a fee of $200 to the attorneys, for the petitioners.

It is further ordered that petitioners pay a fee of $200 to their attorneys from the compensation due them.